IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHADIA AJAMI, : | |
|    Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 20-cv-5411 |
| : | |
| INDIAN HARBOR INSURANCE : | |
| COMPANY, et. al. : | |
|    Defendants. : | |

**MEMORANDUM OPINION**

    This dispute between Plaintiff Shadia Ajami and Defendants Indian Harbor Insurance Company, and X.L. America, Inc. (collectively, "Defendants") concerns underinsured motorist benefits that Plaintiff believes she is owed under a motor vehicle insurance policy provided by Defendants ("the Policy"). Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, their motion will be granted.

I.    **BACKGROUND**

    Defendants are successors to an insurer of D&V Auto Sales, a company in the business of, *inter alia*, exporting cars abroad. D&V retained Plaintiff's husband, Allie Ajami, to drive a car to a port in Philadelphia where it would be loaded onto a ship and then exported to Sierra Leone. On the day in question, Allie brought Shadia with him so that the two could rent a car, drive the two cars separately, and then use the rental to return home after delivering D&V's car to the dock. On the way to getting the rental car, Allie and Shadia were rear-ended at a red light. Shadia suffered various injuries and now demands that Defendants, as D&V's insurer, provide her with underinsured motorist benefits. The policy Defendants issued to D&V, however, contains an exclusion whereby it does not apply "to any 'bodily injury' . . . arising out of or

1

resulting from . . . 'Auto exporting operations.'"  Defendants assert that Ajami's actions falls within the exclusion, precluding coverage.

## II.     STANDARD OF REVIEW

"[S]ummary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (citations and internal quotations omitted); Fed. R. Civ. P. 56(c).  In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment."  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotations and alterations omitted).

## III.    DISCUSSION

### A.  Principles of Policy Interpretation

Before analyzing the parties' arguments regarding coverage, an overview of the principles of insurance policy interpretation is in place.[1]  Interpretation of an insurance policy is a question of law.  *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006).  The primary goal of interpreting an insurance policy is "to ascertain the intent of the parties as manifested by the language of the written instrument."  *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (citation omitted).  If the language of an insurance provision is clear and unambiguous, it must be given full effect.  *Erie Ins. Exch. v. Conley*, 29 A.3d 389, 392 (Pa. Super. 2011) (citation omitted).  If, on the other hand, an insurance policy provision is ambiguous, it must be construed narrowly in favor of the insured.  *Wolfe v. Ross*, 115 A.3d 880, 884 (Pa. Super. 2015); *Penn-America Ins. Co. v.*

---

[1] Although the parties note that the policy was issued in Florida, neither disputes that Pennsylvania law applies.

*Peccadillos, Inc.*, 27 A.3d 259, 265 (Pa. Super. 2011).  A term is ambiguous only when it is "reasonably susceptible of different constructions and capable of being understood in more than one sense." *Allstate Fire and Casualty Ins. Co. v. Hymes*, 29 A.3d 1169, 1172 (Pa. Super. 2011) (citation omitted); *Wolfe*, 115 A.3d at 884.  Mere disagreement about a term's meaning is insufficient to render it ambiguous.  *Bohler-Uddeholm Am., Inc. v. Ellwood Grp.*, Inc., 247 F.3d 79, 93-94 (3d Cir. 2001).  In general, insurance policies should be read "to avoid ambiguities, if possible, and not torture the language to create them." *St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981).

### B.  Overview of Relevant Terms

Under the Policy Defendants agreed to "pay all sums that the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.'"  The policy further contains an endorsement titled "Designated Garage Operations Not Covered."  That endorsement provides—with the relevant exclusion highlighted in bold typeface—as follows:

> This insurance does not apply to any "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from the following operations marked with an ☒
>
> - Any work on watercraft
> - Any work on "autos" that operate on treads or rollers
> - **Auto exporting operations**
> - Custom building autos or auto manufacturing
> - Cutting, stretching or welding of frames or forks
> - Fabricating or manufacturing of any operating parts
> - Fire truck pumps or hoses installation, service, or repair
> - Hydraulic work on dump trucks, bucket trucks, boom trucks, scissor lifts, or any equipment that lifts people
> - Installation, service or repair of prisoner restraints including hand or leg cuffs, chains, protective barriers or any device used to restrain a prisoner

3

- LPG work including, but not limited to installation, service and repair of appliances, gas lines, and refilling of tanks
- Medical equipment installation, service or repair.
- Painting without a ventilated paint booth with explosion proof lighting and paints not stored in closed metal cabinet
- Service, repair or installation of ignition interlock devices
- Servicing, repairing or installation of blades or cutting tools
- Suspension work other than replacing or repairing parts to meet the manufacturers original standards.

"Auto Exporting Operations" was marked with an "x." The policy defines "Auto" as "a land motor vehicle, "trailer" or semitrailer." It does not define the terms "exporting" and "operations." However, as discussed *infra*, it does define "Garage Operations." Plaintiff argues that the term "auto exporting operations" is ambiguous; and second, that even if the term is unambiguous, the facts surrounding the accident at issue do not fall within it.

### C. Nature of the Term "Auto Exporting Operations"

To show that a term is ambiguous, Plaintiff must point to some objectively reasonable alternative meaning of the term. *Hymes*, 29 A.3d at 1172; *Wolfe*, 115 A.3d at 884. Plaintiff surmises that the term "auto exporting operations" only encompasses the process of loading and unloading a car onto a ship or transport vehicle, and activities performed during transit. Defendants argue that a close analysis of the term "auto exporting operations" puts paid to Plaintiff's position.

This Court agrees with Defendants. There is no ambiguity as to the meaning of "auto exporting operations." "Auto" is a car—a "land motor vehicle." Although the words "exporting" and "operations" are not defined in the Policy, looking to their ordinary meaning as found in a dictionary the word "export" is to "convey from one country or region to another,"

and the word "operations" is "a performance of a practical work or processes."[2] *See Lenau v. Co-eXprise, Inc.*, 102 A.3d 423, 429 (Pa. Super. 2014) (citation omitted) (noting that undefined words in a contract are to be given their ordinary meaning); *True R.R. Assocs., L.P. v. Ames True Temper, Inc.*, 152 A.3d 324, 339 (Pa. Super. 2016) (citation omitted) ("[a court] may inform [its] understanding of [contractual] terms by considering their dictionary definitions."). Taken together, then, "auto exporting operations" means "the performance of practical work or processes to convey a car from one country or region to another."

In addition, although the policy does not define "operations," it does define "Garage Operations" to "include all operations necessary or incidental to a garage business," further cementing the conclusion that the exclusion at issue was intended to include all activities "incidental" to exporting a car—such as driving a car to a dock. To conclude otherwise would be to turn the language of the Policy into a pretzel to create ambiguities. *See, e.g. Gene & Harvey Builders v. Pa. Mfrs' Ass'n Ins. Co.*, 517 A.2d 910, 917 (Pa. 1986) (citation omitted) ("The language of an insurance policy should not be tortured to create ambiguities, but should be read to avoid ambiguities if possible.").

### D.  Whether the Accident Falls Into the Exclusion

Now that it has been determined that "auto exporting operations" is clear, and means "the performance of practical work or process to convey a car from one country or region to another," the term must be applied to the facts of this case. *Conley*, 29 A.3d at 392 (stating that if an

---

[2] *Export*, Merriam-Webster, https://www.merriam-webster.com/dictionary/export#:~:text=1%20%3A%20something%20that%20is%20sent,Saudi%20Arabia's%20most%20important%20export (last visited July 20, 2022); *Operation*, Merriam-Webster, https://www.merriam-webster.com/dictionary/operations (last visited July 20, 2022).

insurance policy provision is clear and unambiguous, it must be given its full effect). Plaintiff asserts in response to Defendant's statement of undisputed facts that she disputes various facts, but she fails to cite to the record at all in doing so. And, importantly, the parties do not dispute the following: (1) that Allie and Shadia were only in the car on the day in question to complete a job for D&V; (2) that they planned to get a rental car to accomplish this task; and, (3) that before getting the rental car, they were rear-ended. The only remaining question, therefore, is whether Plaintiff was injured as a result of "auto exporting operations," *i.e.*, work undertaken to export a car.[3] By assisting her husband to drive the car to the port, on D&V's request, it follows that she was. Because the accident at issue squarely falls within the Policy's exception, and there are no material disputes of fact, summary judgment must be granted and Plaintiff's claim against Defendants must be dismissed.

An appropriate order follows.

**BY THE COURT:**

/s/Wendy Beetlestone, J.
_____
**WENDY BEETLESTONE, J.**

---

[3] Plaintiff also argues that the fact that Shadia was "merely a passenger" in the car somehow precludes application of the exclusion as to her: but it cites to no case law for support, thus waiving the issue. *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) ("an argument consisting of no more than a conclusory assertion such as the one made here (without even a citation to the record) will be deemed waived."); *see also* Local Rule 7.1(c) ("Every motion not certified as uncontested, or not governed by Local Civil Rule 26.1(g), shall be accompanied by a brief containing a concise statement of the legal contentions *and authorities relied upon* in support of the motion.") (emphasis added).